NEW-YORK, April, 1823.

The People vs. Sarah Rowland.

The People vs. Sarah Rowland. *Disorderly House.*

It is unnecessary the house should be *noisy* to constitute it a disorderly house.

SARAH ROWLAND, a widow woman, was arraigned and tried for keeping a disorderly house.

The facts were, that she lived at 100 Chapel-street, next door to the corner of Leonard-street, and kept a small grocery store ; that young apprentice boys and others were in the habit of frequenting her house, for the purpose of drinking and tippling, and meeting young

*See post. pages 290,291. (Note.)

girls. It appeared by the testimony of Mrs. Eldridge, that her daughter had been seduced and ruined in that house.

It was proved that young boys and girls had been seen together in the back room of the house at late hours in the evening, and it appeared that a number of both sexes were in the habit of going there for the purpose of assignation; and that, upon the whole, it was a bad house.

*M'Ewing*, counsel for the defendant, contended that this was not a disorderly house; that Mrs. Rowland was an honest, industrious woman, who found it necessary for her support to keep a small grocery—she could not prevent young boys and apprentices coming into her house, and upon complaint being made to her, had always ordered them away. That among the numerous places of assignation and prostitution in the city, it was fair to suppose the seduction and ruin of the daughter of Mrs. Eldridge in some of those places, and not at the house of the defendant; that there was no noise or tumult in or about the house—the neighbors were not disturbed; and that the defendant had a family of children who would suffer if the establishment of their mother was broken up.

*Maxwell, District Attorney*, replied, that however hard a conviction might operate upon the defendant and her family, it had nothing to do with the verdict. The Court would take care to impose a proper penalty upon her if she was found guilty, as charged in the indictment. It was proved, by the testimony of a number of witnesses, that the house was a harbour for young boys and apprentices —they met in the back room, with the knowledge and by the implied consent of the defendant; that young women had been seen coming to the house and returning from

NEW-YORK, it in company with men ; and upon one occasion at least,
April, 1823. indecent familiarities were seen in the back room, and that

The People it was unnecessary to constitute a disorderly house, the
vs.
Mary Ann neighborhood should be disturbed by any noise or tu-
Clark. mult proceeding ffrom it. It was sufficient if immoral
practices were permitted in the house, or any acts of lewd-
ness or improper connection of the sexes, &c. Courts
and juries were the guardians of public morals, and would
punish any infraction of them as the circumstances òf each
case required.

The Court observed that it was unnecessary the public
peace or the neighborhood, should be disturbed by a
house, to constitute it disorderly. It was sufficient if it
was the resort of people for any immoral purposes. A
gambling-house, is not always noisy, and no person de-
nies it to be a disorderly house. A house where people
go to drink and tipple, is not always a noisy house, and
yet it is a very disorderly one. A house where people meet
for the purpose of assignation is a disorderly house, be-
cause it is a violation of the laws of decency and morality.
And left it to the jury to say whether, from the evidence
before them, the defendant was guilty of keeping a dis-
orderly house.

The jury found her guilty.